IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,** )
)
**Plaintiff,** )
)
**vs.** ) **Case No. 13-cr-30201-DWD-1**
)
**WILLIE GONZALEZ,** )
)
**Defendant.** )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court is Defendant Willie Gonzalez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 321). Defendant is currently serving a 420-month term of imprisonment on convictions related to methamphetamine trafficking (Doc. 222, Doc. 225). Defendant is housed at USP-Atwater (Doc. 324).[1] Defendant's projected release date is January 24, 2044 (Doc. 256, p. 7). Defendant asks this Court to reduce his sentence to 20 years or "any other amount of time that the Court deems just" (Doc. 321, p. 24). The Government opposes the motion (Doc. 324). For the following reasons, the motion will be denied.

### Procedural History

An indictment charged Defendant with Conspiracy to Distribute Methamphetamine (Count 1), Possession with Intent to Distribute Methamphetamine (Count 2), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count

[1] *See also Find an Inmate*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc (last viewed Mar. 30, 2023).

3), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), 846, and 18 U.S.C. § 924(c)(1)(A) (Doc. 18). Following a three-day jury trial, a jury found Defendant guilty on all three counts (Doc. 170). On March 27, 2015, Defendant was sentenced to 360 months on Counts 1 and 2, to be served concurrently to each other, and 60 months on Count 3 to run consecutive to Counts 1 and 2, for a total sentence of 420 months (Doc. 222). On April 18, 2016, the Seventh Circuit Court of Appeals affirmed Defendant's sentence (Doc. 264).

**The First Step Act of 2018**

Compassionate release is an exception to the general rule that sentences imposed in criminal cases are final and may not be modified. Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it through the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion, provided they exhaust administrative rights prior to seeking relief in the courts. The Seventh Circuit has held that failure to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) is an affirmative defense that must be raised by the Government or else it is waived. *See United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). Here, the Government does not challenge Defendant's exhaustion efforts (*See* Doc. 324) and therefore waives any argument concerning the same.

The compassionate release statute provides that a court "may not modify a term of imprisonment once it has been imposed except" if "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it "finds that extraordinary

and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit recently observed that the proper consideration for a compassionate release motion proceeds in two steps:

> *First*, the prisoner "must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *Thacker*, 4 F.4th at 576. *Second*, "[u]pon a finding that the prisoner has supplied such a reason," the district court "exercis[es] the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner."

*United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022) (citing *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021), cert. denied, 142 S. Ct. 1363 (2022). The defendant bears the burden of showing that he is entitled to relief under the First Step Act. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

Where a motion is brought by the defendant, the Court may consider the Sentencing Commission's policy statements but is not bound by them. *Gunn*, 980 F.3d at 1180. This "working definition of 'extraordinary and compelling reasons'" includes circumstances surrounding the medical condition of the defendant, the age of the defendant, and family circumstances. *Id.* (citing U.S.S.G. 1B1.13 and its Application Notes). However, the Court is not constrained by the policy statement and Application Notes in U.S.S.G. 1B1.13; the Court merely uses the working definition to assist in exercising its discretion. *See Gunn*, 980 F.3d at 1180.

The Seventh Circuit recently confirmed that the "authority in the compassionate release statute 'only goes so far' and 'cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in' other statutes." *United States*

*v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) (citing *Thacker*, 4 F.4th at 571). Nor can the statute "be used to challenge a sentence on grounds the defendant could have advanced on direct appeal." *Id.* (citing *United States v. Martin*, 21 F.4th 944 (7th Cir. 2021)). "Any other conclusion . . . would permit a defendant to 'circumvent the normal process for challenging potential sentencing errors, either through the direct appeal process or collaterally through a 28 U.S.C. § 2255 motion." *Id.* (citing *Thacker*, 4 F.4th at 571)).

Accordingly, changes in the law "cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction." *Brock*, 39 F.4th at 465; *Thacker*, 4 F.4th at 576 (At step one of a compassionate release motion, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c)"). Similarly, "rehabilitation efforts" alone "cannot serve as a stand-alone reason" for compassionate release. *Peoples*, 41 F.4th at 842 (citing *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021), cert. denied, 142 S. Ct. 2771 (2022)).

**Discussion**

Gonzalez raises two general arguments for why extraordinary and compelling reasons exist for his release: (1) innate issues with his sentence and the § 3553(a) factors, and (2) heightened risk factors caused by the Covid-19 pandemic (Doc. 321, pp. 8-19). Related to his sentence, Gonzalez argues that his sentence is unusually long and disparate when compared to both similarly situated defendants and his co-defendants (Doc. 31, pp.

8-12, 16-24). He also argues that he has made rehabilitation efforts and is not a danger to the community, citing his conduct in prison and many letters of support from his family.

As for the Covid-19 pandemic, Gonzalez argues that he has a heightened risk of suffering severe illness or death from Covid-19 and new variants because of his Hispanic heritage and the challenges posed by congregant living increasing the spread of Covid-19 in federal prisons (Doc. 321, pp. 13-14). While he specifically denies that he has any pre-existing medical issues that make him more vulnerable to the virus (Doc. 321, p. 13), he argues generally that his punishment is much more severe now because of the modifications BOP made during the pandemic (Doc. 321, p. 15) (citing *United States v. Topete*, 524 F. Supp. 3d 1201, 1211 (N.D. Ala. 2021), *United States v. Holguin-Gollegos*, 2021 U.S. Dist. Lexis 191656 (D. Ks. Oct. 5, 2021), *United States v. Taylor*, 2021 U.S. Dist. Lexis 13817 (D. Md. Jan. 25, 2021)).

The Government opposes Gonzalez's motion, arguing that Gonzalez failed to establish extraordinary and compelling reasons for his release (Doc. 324). The Government also argues that his sentence continues to remain appropriate due to his specific conduct as a leader of the drug trafficking operation and his ordering of the beating of an individual because of a drug debt (Doc. 324, pp. 10-11). The Government further argues that Gonzalez's concerns with the Covid-19 pandemic are mitigated by his receipt of the Covid-19 vaccine. Finally, the Government contends that Gonzalez's conduct in prison, in addition to the severity of his offense, outweigh any mitigating factors from his rehabilitation efforts (Doc. 324, pp. 14-16).

Gonzalez does not satisfy any of the factual predicates listed by the Sentencing Commission as constituting "extraordinary and compelling reasons" justifying compassionate release. Specifically, he has not argued or established that he is suffering from a terminal illness or other condition from which he is not expected to recover, he is under 65 years old, and he does not indicate any death or incapacitation in his immediate family. He further confirmed that he has no pre-existing medical issues (Doc. 321, p. 13).

However, in the unusual circumstances of the Covid-19 pandemic, courts have been willing to look beyond the enumerated list of extraordinary and compelling reasons listed by the Sentencing Commission, particularly where underlying medical conditions and other risk factors make defendants particularly susceptible to Covid-19. Here, Gonzalez cites to his Hispanic heritage and congregate living situation as two factors which may increase his vulnerability to Covid-19. Indeed, the Centers for Disease Control ("CDC") recognizes that persons from racial and ethnic minority groups, and those living in congregate settings may have an increased susceptibility to severe illness from Covid-19.[2] The Government, however, argues that any increased risk is mitigated because Gonzalez has received two doses of the Covid-19 vaccine (Doc. 324-1) (Gonzalez's medical records indicate that he received a dose of the Covid-19 vaccine on September 28, 2021 and November 9, 2021, but refused an additional does on April 20, 2021).

[2] *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed Apr. 4, 2023).

The Seventh Circuit instructs that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary compelling' reason for immediate release. *United States v. Newton*, 37 F.4th 1207, 1208 (7th Cir. 2022) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also* *United States v. Young*, No. 22-2219, 2022 WL 17076692, at *1 (7th Cir. Nov. 18, 2022). However, the Seventh Circuit also recognizes a "safety valve" for prisoners who show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, not withstanding the vaccine. *See* *Broadfield*, 5 F.4th at 803; *United States v. Ugbah*, 4 F. 4th 595 (7th Cir. 2021). This safety valve "permits federal prisoners to make motions with newly proffered individualized facts based on concerns like [variant] breakthrough cases, long COVID, or the relative inefficacy of vaccines for certain vulnerable prison populations, like the immunocompromised." *Newton*, 37 F.4th at 1209 (citing *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022) and *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022)).

Gonzalez does not identify a specific vulnerability apart from his general population-based arguments. Nor does the record contain any indication that the cumulative effect of his general risk factors constitutes an extraordinary and compelling reason that would justify relief at this time. *See, e.g.*, *United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *2 (7th Cir. May 6, 2022) ("[A]n inmate's risk of COVID-19 cannot justify compassionate release absent an inability 'to receive **or benefit from a vaccine**.") (emphasis added). Further, Gonzalez's arguments concerning his increased risk of susceptibility to the virus due to prison conditions does not, at present, constitute an

extraordinary and compelling reason for a sentence reduction. Gonzalez is currently incarcerated at USP-Atwater (Doc. 324). USP-Atwater is currently operating at an Operational Level 1, indicating that its medical isolation rate is less than 2% and the community transmission rate is less than 100 per 100,000 over the last 7 days.[3] Further, USP-Atwater currently has no inmates or staff members who have tested positive for Covid-19.[4] Additionally, the Bureau of Prisons has implemented a Modified Operations Plan to combat the spread of COVID-19 in all of its facilities.[5] Thus, the risk of contracting Covid-19 at USP-Atwater remains low.

Gonzalez's arguments directed towards his sentence also do not amount to an extraordinary and compelling reason for a sentence modification. Here, he specifically argus that his sentence is unusually long and disparate when compared to both similarly situated defendants and his co-defendants (Doc. 31, pp. 8-12, 16-24). He postulates that his sentence is inappropriate as it is on par with sentences for violent crimes generally, and much longer than his co-defendants' sentences. However, Gonzalez ignores key aggravating factors that separate his sentence from those of his co-defendants and "violent criminals" in general. Notably, and as further outlined in his presentence investigation report and at sentencing, Gonzalez was convicted of heading a drug trafficking organization that distributed at least 27.21 kilograms of "ice" in the St. Louis

---

[3] *See Covid-19 Modified Operations Plan & Matrix*, BOP, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last viewed Apr. 4, 2023); *USP Atwater*, https://www.bop.gov/locations/institutions/atw/ (last viewed Apr. 4, 2023).

[4] *BOP Covid-19 Statistics*, available at https://www.bop.gov/coronavirus/covid19_statistics.html (Apr. 4, 2023).

[5] The Modified Operations Plan is available at https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed Apr. 4, 2023).

metropolitan area and possessing guns while doing so (Doc. 198, ¶ 40) (Sealed). Moreover, and unlike his co-defendants, Gonzalez's sentence was driven by the fact that he qualified as a career offender[6] who had been convicted of a § 924(c) offense, making his guideline range 360 months to life (Doc. 198, ¶ 47) (Sealed); Doc. 233 at pp. 8-11). Also, unlike his co-defendants, Gonzalez went to trial and thus did not receive a three-level reduction in his guideline range for acceptance of responsibility (Doc. 233).

At sentencing, Judge Herndon specifically commented on these disparities, and further highlighted the seriousness and severity of his offenses (Doc. 233). He emphasized the devastating impact Gonzalez's distribution had on the community due to the highly addictive form of methamphetamine involved (Doc. 233, p. 32). He also stressed the dangerous and violent nature of the criminal enterprise involved, including Gonzalez's use of physical violence to collect money (Doc. 233, pp. 32-33). Judge Herndon specifically recalled how Gonzalez's "underlings used his name for intimidation" and commented on how his violent characteristics put him "in a different category" (Doc. 233, p. 33).

Similarly, Gonzalez's rehabilitation efforts, singularly, or in combination with his other grounds of relief, are not enough to revisit a sentence under 18 U.S.C. § 3582(c)(1)(A). *Peoples*, 41 F.4th at 842 (citing *Hunter*, 12 F.4th at 563) ("[R]ehabilitation efforts" alone "cannot serve as a stand-alone reason" for compassionate release); *see also*

[6] His criminal history consisted of both a prior crime of violence (assault with a firearm) and a prior controlled substance offense (possession of a controlled substance for sale) (Doc. 198, ¶ 47 (Sealed); *see also* Doc. 233, pp. 33-34).

28 U.S.C. § 995(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Because Gonzalez has not established an extraordinary and compelling reason for his relief, the Court need not consider the sentencing factors in 18 U.S.C. § 3553(a). Nevertheless, even if Gonzalez could establish an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A), the sentencing factors continue to outweigh any considerations of compassionate release here. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). The United States points to the seriousness of his offense, in addition to the multiple incident reports from Gonzalez's time incarcerated. Indeed, the documents Gonzalez included with his Motion reveal that he received multiple "high level incident reports" while incarcerated, and one as recently as April 2022 (Doc. 321, p. 31). These disciplinary offenses included violations for possession of drugs/alcohol and a dangerous weapon (Doc. 321, pp. 31, 35; Doc. 324-2). Thus, as of September 2022, the BOP assessed Gonzalez's recidivism level as "high risk" (Doc. 321, p. 35). This conduct, in addition to the seriousness of Gonzalez's offense, and specifically the large quantity of drugs involved and Gonzalez's use of violence and guns in furtherance of the conspiracy, indicate that his sentence remains necessary to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment, to adequately deter him and others from committing further crimes, and to protect the public. Accordingly, under these circumstances, compassionate release is inappropriate.

## Conclusion

For these reasons, and considering the totality of the record before the Court, Gonzalez has not established an extraordinary and compelling reason for his relief, and compassionate release is not appropriate. Defendant's Motion for Compassionate Release (Doc. 321) is therefore **DENIED**.

**SO ORDERED.**

Dated: April 5, 2023

DAVID W. DUGAN
United States District Judge